IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

WILLIAM L. SULLIVAN,                    )
                                        )
          Petitioner,                   )
                                        )
v.                                      )          CIVIL ACTION NO.  96-A-768-N
                                        )
JAMES DELOACH, *et al*.,                )
                                        )
          Respondents.                  )

SUPPLEMENTAL RECOMMENDATION OF THE MAGISTRATE JUDGE

On March 5, 2004, the undersigned Magistrate Judge entered a Recommendation that the petition for habeas relief filed by Sullivan be denied.  The petitioner then filed objections.  It is to those objections which this supplemental Recommendation is addressed. The court will address each objection seriatim.

**Objections 1 and 2.**  Sullivan first objects to the finding in the Recommendation that "he . . .  presented no evidence to show that he told trial counsel that his daughter was present during and observed the fight."  This finding is at the end of a paragraph of the Recommendation which discusses whether Sullivan told his lawyer that his daughter Rene was an "eyewitness."  It was in this context that the court made the "no evidence" finding. More pointedly, Sullivan argues that the finding in the Recommendation is incorrect because at the evidentiary hearing, Sullivan testified that he asked his lawyer to talk to Rene "because she was an eyewitness."  Pet. Obj. at 11.  In support of this "eyewitness" contention, Sullivan cites to page 199 of the evidentiary hearing transcript, lines 9-22.

Sullivan testified that "[i]t seems later as the days were coming up to trial, yes, I had asked him about Rene." Trns. of Evid. Hrg. at 198, ln. 5-6 (hereinafter Trns.) When asked what he said to his lawyer about Rene, Sullivan responded that he "asked him then he was going to put Rene on the witness stand." *Id.* at ln. 12-13.[1] In his objections, Sullivan points to no evidence supporting the claim that he told his lawyer that Rene was an eyewitness. However, the court's independent review of the evidence does point to some testimony that could be understood to suggest otherwise. During Sullivan's cross-examination, the court made inquiry of him about this issue.

> THE COURT: Why did you want Mr. Kirk to call your daughter, Rene, to the stand?
> A.      During the time up to the trial, I don't reckon that me and Janice had realized that she was as important a witness as that she was.
> THE COURT: Well, if you hadn't realized that, then, why would you have wanted her, a six year-old child, to testify at your trial?
> A.      She was the only eyewitness that was there.
> THE COURT: When did you tell Mr. Kirk that she was an eyewitness?
> A.      I had mentioned it before trial. And I had mentioned it several times during trial. Because I was wanting him to place her on the witness stand the testify. (sic)
> THE COURT: So, Mr. Kirk was incorrect when he said that no one ever told him that she was an eyewitness?
> A.      Mr. Kirk probably was not correct. He probably does not remember. It was not a point I kept pressing with him.

Trns. at 204-205.

Frankly, it is difficult to reconcile Sullivan's insistence that Rene was an important eyewitness with his statement that this was "not a point I kept pressing with him." If Rene

---

[1] It is correct that Sullivan testified that Rene was present in the courtroom during Sullivan's trial. Trns. at 198. At best, this observation merely supports a contention that she was available to testify. The respondents do not contest this obvious conclusion.

was an important witness, it borders on the incredible that Sullivan would not press his counsel to call her in his defense.

In his second objection, Sullivan objects to the Recommendation's conclusion that "a reasonable trial counsel could have concluded that he should not call Rene under any circumstance." Rec. at 18. Sullivan argues to the contrary suggesting that Rene's observations might have persuaded a jury to believe Sullivan's defense. In the original Recommendation, the court discussed at length the discrepancies between what Rene said her testimony would have been and what the evidence at trial did show. In concluding that discussion, the Recommendation observed that Sullivan could show no prejudice arising from counsel's failure to call Rene to testify.

> Renee's testimony that Smith was armed with a knife is contrary to all of the physical evidence in the case and is unsupported by any other testimony including that of Sullivan. That lack of support coupled with the inconsistencies between her testimony given when she was 11 and her testimony in this court when she was 17, convinces the court that because of the strength of the other evidence in the case there is no probability that the jury would have credited her testimony about the knife. Consequently, the court concludes there is no reasonable probability that the results of the proceeding would have been different.

Rec. at 24.

The Magistrate Judge adheres to that conclusion. Thus, it makes no difference as a matter of law whether a reasonable lawyer could have decided not to call Rene as a witness. In the absence of a showing of prejudice, Sullivan cannot prevail on his claim of ineffective assistance of counsel. "[P]etitioners must affirmatively prove prejudice because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case

as they are to be prejudicial.  [T]hat the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." *Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000)(quoting Strickland, 466 U.S. at 693).

**Objection 3.**  Sullivan objects to the Recommendation's conclusion that his trial counsel "had no information to suggest that any persons were eyewitnesses, other that Sullivan."  Rec. at 23.  In discussing this objection, Sullivan presents no evidence about what counsel *knew*; rather, Sullivan discusses facts from which counsel may have *inferred* that eyewitnesses existed.  "Moreover, trial testimony confirmed the *possibility* of eyewitnesses  . . . " Obj, at 15 (emphasis added).  In essence, Sullivan's objection is founded on the notion that his trial counsel was ineffective for failing to infer from the facts he knew that there might be eyewitnesses.  As a matter of law, this suggestion is unavailing.  "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable.... [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.' " *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir.2000) (en banc ) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). Thus, under federal law, there is "a strong presumption in favor of competence [and] the petitioner's burden of persuasion--though the presumption is not insurmountable--is a heavy one." *Chandler*, 218 F.3d at 1314 (footnote and citations omitted); *see also Strickland*, 466 U.S. at 689-90, 104 S.Ct. at 2065-66 (noting that courts must "indulge [the] strong presumption" that counsel's performance was reasonable and that counsel "made all significant decisions in the exercise of reasonable professional judgment")

4

Sullivan's suggestion about the possibility of eyewitnesses is insufficient to overcome the presumption of competence.

**Objection 4.**  Sullivan objects to the conclusion that even if the evidence had shown that the victim was armed, that would not " ameliorate the factual and legal consequences of Sullivan's drawing his knife when he and Smith broke apart during the fight."  Rec. at 25. Sullivan argues that there is a reasonable probability that, had Mr. Kirk [Sullivan's lawyer] presented Rene's testimony or other proof that Michael Smith [the victim] was armed and jumped Mr. Sullivan, the outcome of the trial would have been different.

This issue was fully addressed in the original Recommendation.  Sullivan himself could not testify affirmatively that Smith had a knife.  *See* Rec. at 18. While conceivably Rene's testimony about a knife might have supported Sullivan's defense or his argument for a manslaughter verdict, that testimony was so contrary to the evidence in the case that there is no reasonable probability that the outcome of the trial would have been different if Rene had testified.

**Objection 5.**  Sullivan contends to the contrary, arguing that the failure to call Rene established a reasonable probability that the outcome of the trial would have been different. The Magistrate Judge disagrees and for the reasons stated in the original Recommendation and this Supplemental adheres to the conclusion that Sullivan's lawyer's failure to call Rene was reasonable under the circumstances known to counsel at the time of the trial and did not prejudice Sullivan because there is not a reasonable probability that had Rene been called as a witness the outcome of the trial would have been different.  Accordingly, it remains the

5

RECOMMENDATION of the Magistrate Judge that the petition for habeas relief be denied.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation within a period of 13 days from the date of mailing or transmittal to them. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 4th day of March, 2005.


_____/s/Charles S. Coody_____
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE

6